IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BETTER PUERTO RICO LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>PAULSON PRV HOLDINGS LLC;<br>V12 LAND LLC; and JOHN DOE,<br><br>**Defendants.** | **Civil No. 23-1529(RAM)** |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants Paulson PRV Holdings LLC ("PRV") and V12 Land LLC's ("V12") (collectively "Defendants") *Motion to Disqualify Counsel of Better Puerto Rico LLC* ("*Motion to Disqualify*"). (Docket No. 7). For the reasons discussed below, the Court **DENIES** Defendants' *Motion to Disqualify*.

**I.   PROCEDURAL BACKGROUND**

On October 10, 2023, Plaintiff Better Puerto Rico LLC ("Plaintiff" or "BPR") filed a *Verified Complaint* in the Puerto Rico Court of First Instance requesting injunctive relief under the Puerto Rico Corporations Act as well as declaratory judgment and damages. (Docket No. 1-1). In essence, BPR claims that PRV made unilateral and *ultra vires* changes to V12's executive team, including removing its CEO and President Fahad Ghaffar ("Ghaffar"), without BPR's consent or approval. Id. ¶¶ 51-56.

Defendants removed the case to this Court on the basis of diversity jurisdiction. (Docket No. 1).

Subsequently, on December 23, 2023, Defendants filed the pending *Motion to Disqualify*. (Docket No. 7). Defendants seek to disqualify two of BPR's attorneys, namely Jose A. Andreu-Fuentes ("Andreu") and Alfredo M. Umpierre-Soler ("Umpierre"). Id. In essence, Defendants claim that Andreu and Umpierre have previously represented entities owned by or related to PRV in other legal matters, thereby acquiring confidential information that could be used to Defendants' detriment. Id.

Plaintiff filed an *Opposition* asserting that the previous legal representations are not substantially related to the present case and therefore disqualification is not required. (Docket No. 53). Defendants filed a *Reply* and Plaintiff filed a *Sur-reply*. (Docket Nos. 61 and 71-1, respectively).

## II. APPLICABLE LAW

Rule 1.9(a) of the American Bar Association Model Rules of Professional Conduct ("Model Rules") provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MODEL RULES OF PROF'L CONDUCT R. 1.9(a) (2024). "The purpose of this disqualification rule is to prevent confidential information, from a prior representation, from being used for the benefit of another client who is now the adversary of the prior client." Reyes Canada v. Rey Hernandez, 193 F. Supp. 2d 409, 411 (D.P.R. 2002). Model Rule 1.7(a) also prohibits legal representation if it "involves a concurrent conflict of interest[,]" *i.e.,* if "the representation of one client will be directly adverse to another client." MODEL RULES OF PROF'L CONDUCT R. 1.7(a)(1) (2024).

The First Circuit has held that when a party seeks disqualification of an attorney due to a conflict of interest, "the relevant inquiry is whether the subject matter of the two representations is 'substantially related'; could the attorney have obtained confidential information in the first suit that would have been relevant to the second." Borges v. Our Lady of the Sea Corp., 935 F.2d 436, 439–40 (1st Cir. 1991) (quoting Analytica, Inc. v. NPD Rsch., Inc., 708 F.2d 1263, 1266 (7th Cir.1983)). *See also* Estrada v. Cabrera, 632 F. Supp. 1174, 1175 (D.P.R. 1986) (quoting La Salle Nat'l Bank v. Cnty. of Lake, 703 F.2d 252, 255 (7th Cir. 1983)) ("The basic question which the district court faces in considering a motion praying for disqualification is 'whether it could reasonably be said that during the former representation the attorney might have acquired information

related to the subject matter of the subsequent representation'"). Under the substantially related test:

> [T]he first step is to factually reconstruct the scope of the prior representation. Second, the Court must determine whether it is reasonable to infer that the information allegedly given, would have been provided to an attorney involved in the representation of those matters. Lastly, the court must determine whether that information is relevant to the issues raised in the litigation pending against the former client.

Reyes Canada, 193 F. Supp. 2d at 411–12 (citations omitted).

The moving party bears the burden of establishing the facts required for disqualification. Estrada, 632 F. Supp. at 1175 (citing Evans v. Artek Sys. Corp, 715 F.2d 788, 794 (2d Cir. 1983). "For this purpose, naked claims that the attorney received confidential information from his prior (and now adverse) client do not suffice." Velazquez-Velez v. Molina-Rodriguez, 235 F. Supp. 3d 358, 361–62 (D.P.R. 2017). *See also* Estrada, 632 F. Supp. at 1175 ("To disqualify a party's chosen attorney is a serious matter which could not be supported by the mere possibility of a conflict"). Instead, **the moving party must allege the type and nature of the confidences that were exchanged in the prior litigation that should subsequently disqualify the attorney in the latter representation**." Starlight Sugar Inc. v. Soto, 903 F. Supp. 261, 265 (D.P.R. 1995) (emphasis added). Thus, simply asserting "that confidential information was exchanged in a prior

representation will not suffice to create the 'irrebuttable presumption' of shared confidences that is so frequently spoken of in this area of the law." Id.; *see also* Reyes Canada, 193 F. Supp. 2d at 411 (noting that motions to disqualify should be approached with cautious scrutiny because they are often used for strategic purposes).

### III. DISCUSSION

#### A. Alleged Conflicts of Interest and Information Obtained

In their *Motion to Disqualify*, Defendants identify three legal representations that allegedly constitute conflicts of interest. The Court reconstructs the facts and scope of each legal representation, as well as the confidential information allegedly obtained from them, as follows:

1. The Condado Contracts Representation

Defendants assert that from November 2020 through February 2021, Andreu provided legal services to the La Concha and Vanderbilt hotels with respect to contracts regarding STK restaurant ("STK"), including a proposed amendment to the STK agreement, the re-opening of STK at the Vanderbilt, and the STK licensing agreement at La Concha and the Vanderbilt (the "Condado Contracts Representation"). (Docket No. 7 ¶¶ 1, 3). These agreements were eventually executed by Paulson-related entities such as Duo Condado, Condado Duo La Concha SPV LLC, and Vanderbilt

SPV LLC. Id. ¶ 1. Co-defendant PRV is the managing member of Duo Condado, which is in turn the sole equity member of Condado Duo La Concha SPV, LLC and Condado Duo Vanderbilt SPV. Id. ¶ 2.

Defendants claim that during the Condado Contracts Representation, Andreu was in constant communications with the Vanderbilt's former General Manager to provide advice regarding the contracts and strategic considerations as to the re-opening of STK restaurant.

2. The F40 Litigation

In 2022, Andreu represented F40, LLC ("F40") in the case Bee Fast, Corp. v. F40, LLC, Civil No. 22-1290 (SCC) (the "F40 Litigation"). Id. ¶ 5. F40, an entity whose sole member is PRV, acquired a luxury car dealership and real-estate with V12. Id. Per the complaint in the F40 Litigation, the Plaintiff therein sought specific performance of a contract to sell a 2022 Ferrari SF90 Spider. See Bee Fast, Corp. v. F40, LLC, Civil No. 22-1290 (SCC) (Docket No. 1).

Defendants claim that through his legal representation, Andreu learned about F40's ownership structure and corporate organization, as evinced by filings prepared by Andreu regarding the Court's lack of subject matter jurisdiction. (Docket No. 7 ¶ 8. Defendants maintain that this was not public information and thus must have been obtained through F40's officers and/or

Civil No. 23-1529(RAM) 7

executives. Id.[1] Specifically, Defendants identify that Andreu obtained the following information, and claim that it is relevant to the present adverse representation:

> [T]he organization of F40 and V12, Puerto Rico LLCs, owned by PRV; the existence and organization of co-defendant in this case, PRV, owned by Paulson Management IV LLC, and therefore, the existence and organization of Paulson Management IV LLC, whose majority owner is co-defendant Paulson 2009 Family Trust; and, importantly, Paulson's acquisition, through F40, of GHK's business and assets, and through V12, the real estate on which the car dealerships operate, along with information concerning F40's and V12's finances, F40's operations and developing business relationships, as well as internal and sensitive communications concerning the matters alleged in the complaint.

Id. ¶ 10.

### 3. The Díaz Case

On November 3, 2021, Condado Duo and Ghaffar jointly engaged Andreu and Umpierre to defend them in the case Enrique Díaz-Pagán v. Int'l Hosp. Rests., Inc., et al., Civil No. SJ2021CV06492 (the "Díaz case"), whereby Enrique Díaz-Pagán sued for wrongful termination, discrimination, and defamation. Id. ¶¶ 12-13.

---

[1] Defendants also note that in support of the motion to dismiss in the F40 Litigation, Andreu submitted a sworn statement signed by Ghaffar, whereby Ghaffar attested that he was "familiar with the company's corporate structural organization, business records, communications, contracts, agreements, and business operations." (Docket No. 7 ¶ 9). Upon review of the Sworn Statement, this refers to Ghaffar's personal knowledge and cannot be attributed to Andreu. See Bee Fast, Corp. v. F40, LLC, Civil No. 22-1290 (SCC), Docket No. 23-1.

International Hospitality Restaurants, Inc. ("IHR") is owned by Duo Condado, whose managing member is PRV. Id. ¶ 12. Defendants note that filings prepared by Andreu and Umpierre in the Díaz Case are identical to those filed by IHR and thus infer that Andreu and Umpierre "had access to, and shared among an extended unit of lawyers, confidential and sensitive information concerning Paulson Defendants." Id. ¶ 16. Lastly, Defendants posit that through the Díaz Case, Andreu and Umpierre had access to high-ranking officers and attorneys for the Paulson Defendants as well as confidential and sensitive information regarding Paulson entities, including their ownership, corporate structure, and other information not readily available to the public. Id. ¶¶ 19-20.

### B. Existence of a Conflict of Interest

After reconstructing the scope of the three previous legal representations, the Court finds that Defendants have not evinced that any of representations are substantially related to the claims at hand nor that Andreu and Umpierre obtained confidential information that could be used to Defendants' detriment in the case at bar. The three previous legal representations consist of: (1) legal advice regarding contracts and lease agreements for the reopening of a restaurant; (2) litigation concerning a contract to sell a luxury vehicle; and (3) litigation in an employment discrimination and wrongful termination case. In the case at bar,

Civil No. 23-1529(RAM)                                                    9

BPR seeks injunctive relief and claims that PRV made unliteral and *ultra vires* changes to V12's executive team without BPR's consent or approval.

First, the subject matter of the pending litigation and the previous legal representations are wholly unrelated. The present case also involves distinct parties. It is worth noting that Andreu and Umpierre did not previously represent PRV or V12, the named defendants in this case. Rather, they represented entities either owned or managed by, or related to PRV. Defendants aver that this is enough to create a conflict of interest but do not provide any legal authorities or citations to that effect. *See* L. CV. R. 7(a) (requiring appropriate support for propositions stated in a motion).

Defendants maintain that by previously representing Ghaffar and entities whose sole or managing member is PRV, Andreu and Umpierre have gained access to (1) high-level executives of Paulson entities; (2) other attorneys that represent Paulson entities; and (3) confidential and sensitive information concerning Paulson entities that is not publicly known, such as their corporate organization and structure. Although Defendants provide some specificity as to the information obtained, their allegations as to the "nature and type of confidences that were exchanged" remain too broad to satisfy their burden. Starlight Sugar Inc., 903 F.

Supp. at 265. Defendants do not show how knowledge regarding the corporate structure and ownership of certain Paulson entities constitutes confidential, adverse information. Moreover, any attorney representing BPR would be able to obtain information regarding relevant corporate structures and would need to do so for threshold issues such as diversity jurisdiction. Therefore, Defendants failed to show more than the mere possibility of a conflict of interest.[2]

### IV. CONCLUSION

In light of the above, Defendants' *Motion to Disqualify* at Docket No. 7 is hereby **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 7th day of February 2024.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge

---

[2] However, the Court notes that it is not analyzing the facts at hand under the Puerto Rico Canons of Professional Ethics, which impose different, more stringent, requirements than the Model Rules.