IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BETTER PUERTO RICO LLC,<br><br>**Plaintiff**,<br><br>v.<br><br>PAULSON PRV HOLDINGS LLC; V12 LAND LLC; and JOHN DOE,<br><br>**Defendants**. | Civil No. 23-1529 (RAM) |

**OPINION AND ORDER**

Pending before the Court is Defendants Paulson PRV Holdings LLC ("Paulson PRV") and V12 Land LLC's ("V12") (collectively "Defendants") *Motion to Dismiss Pursuant to FRCP 12(b)(6)* ("*Motion to Dismiss*"). (Docket No. 37). For the reasons discussed below, the Court **GRANTS** Defendants' *Motion to Dismiss*.

**I. PROCEDURAL BACKGROUND**

On October 30, 2023, Plaintiff Better Puerto Rico LLC ("Plaintiff" or "BPR") filed a *Verified Amended Complaint* requesting statutory injunctive relief pursuant to Article 19.10 of the Puerto Rico General Corporations Act, P.R. Laws Ann. tit. 14 § 3960, (the "GCA" or the "Act") as well as declaratory judgment and damages. (Docket No. 18). Plaintiff claims that Paulson PRV is in breach of its fiduciary duties and violated the doctrine of good faith. Id. ¶¶ 126-31; 140-50. BPR also posits that it is a full member of V12. Id. ¶¶ 28-32. Despite this, BPR claims that

Paulson PRV made unilateral and *ultra vires* changes to V12's executive team, including removing its CEO and President Fahad Ghaffar ("Mr. Ghaffar"), without BPR's required consent or approval. Id. ¶¶ 91-94.

Defendants subsequently filed the pending *Motion to Dismiss*. (Docket No. 37). Therein, they note that only a member or a manager can bring a statutory injunction claim under Article 19.10 and argue that BPR is not a member of V12. Id. at 21. Rather, Defendants assert that pursuant to its operating agreement, V12 is a single member LLC and that there are no written agreements or amendments to the operating agreement indicating that BPR is a member of V12. Id. at 12-19. Additionally, Defendants contend Mr. Ghaffar was an officer of V12 and that Article 19.10 only allows LLC members to challenge the removal of managers, not officers. Id. at 22.

Plaintiff filed a *Response* claiming that when an operating agreement does not specify the mechanism for adding members, as in the present case, the GCA provides that members are admitted by the consent of all members as reflected in the company's records. (Docket No. 56 at 3). Plaintiff proceeds to highlight documentation and facts that allegedly support its claim that through monetary investments, BPR obtained an equity interest in V12 and became a capital member with the consent of Paulson PRV. Id. at 5-20.

Civil No. 23-1529(RAM)                                                    3

Lastly, Defendants filed a *Reply* asserting that Plaintiff's arguments and evidence fall short given that V12 is a single member LLC and therefore any change to its membership structure needed to be in writing. (Docket No. 85).

## II.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows a complaint to be dismissed for "failure to state a claim upon which relief can be granted." When ruling on a motion to dismiss under this rule, courts must determine whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011). This requires treating "any non-conclusory factual allegations in the complaint as true." Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). Courts may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012) (quoting Arturet–Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir. 2005)).

### III. DISCUSSION

In the case at bar, BPR contests Paulson PRV's removal of Mr. Ghaffar from his position as CEO of V12. Specifically, Plaintiff seeks a statutory injunction pursuant to Article 19.10 of the GCA which provides that:

> **Upon application of any member or manager,** the Court of First Instance may hear and determine the validity of any admission, election, appointment, **removal** or resignation **of a manager of a limited liability company, and the right of any person to** become or **continue to be a manager of a limited liability company** . . .

P.R. Laws Ann. tit. 14 § 3960 (emphasis added). From the plain text of the statute, it is evident that Article 19.10 can only be invoked: (1) by members or managers of the LLC; and (2) regarding persons that are managers of the LLC. Therefore, for Plaintiff to adequately state a claim pursuant to Article 19.10, BPR must be a member or manager of V12 **and** Mr. Ghaffar must have been a manager of V12 when he was removed from his position.

### A. BPR is not a member of V12

The Limited Liability Company Agreement is defined by the GCA as:

> That written agreement (whether referred to as a limited liability company agreement, operating agreement, or otherwise) adopted by the members of a limited liability company to govern the internal affairs and administration of a limited liability company. A limited liability company agreement shall be valid

> even when the limited liability company has only one (1) member. A limited liability company agreement may provide rights to any person, including a person who is not a party to the limited liability company agreement, to the extent set forth therein.

P.R. Laws Ann. tit. 14 § 3951(g). Per the *Amended and Restated Limited Liability Company Agreement of V12 Land LLC (Single Member)* (the "Operating Agreement"), dated February 3, 2022 and included as an exhibit to the *Verified Amended Complaint*, **Paulson PRV is the sole member of V12**. (Docket No. 18-2 at 1). The Operating Agreement does **not** provide a mechanism by which additional members can be admitted. Id. at 1-2. Similarly, the Operating Agreement does not establish that non-members can acquire an interest in V12 nor does it outline categories of interest, such as the "equity interest" BPR claims to have obtained. Id. Pursuant to its terms, the Operating Agreement "may be amended from time to time by **written agreement executed by the Member**." Id. at 2. (emphasis added). The Court finds that the plain text of the Operating Agreement evinces that V12 was intentionally created to be a single member LLC. Moreover, the lack of process for admitting new members is consistent with the title of the Operating Agreement explicitly indicating that V12 is a single member LLC. Accordingly, any change to this fundamental characteristic of the LLC should be made in writing, as required by the Operating Agreement.

BPR does not contest the text of the Operating Agreement but rather argues that "[i]f an LLC's operating agreement is silent as to the processes and mechanics to admit new members . . . then the applicable law fills the void through its 'default rule[,]'" namely Article 19.18 of the GCA. (Docket No. 56 at 3). Article 19.18 provides that where the operating agreement does not establish a mechanism to incorporate members, a person acquiring an LLC interest directly from the LLC can be admitted as a member of the LLC after its formation "**upon the consent of all members and where the person's admission is reflected in the records of the LLC**[.]" P.R. Laws Ann. tit. 14 § 3968(b)(1) (emphasis added). Notably, BPR does not provide binding case law to support the proposition that Article 19.19 of the GCA applies to explicitly single member LLCs. However, even assuming *arguendo* that this provision does apply, Plaintiff has not met its requirements.

To support its alleged membership in V12, BPR attaches the following documents to its *Verified Amended Complaint*: (1) a 2022 Schedule K-1 Form identifying BPR as a "limited partner or other LLC member" and "foreign partner" of V12 (the "K-1 Form"); (2) a Banco Popular de Puerto Rico Commercial Loan Settlement Statement dated February 4, 2022 whereby V12, F40 LLC, and JPFG Ferrari LLC sought $106,409,624.00 to purchase of the assets of Gomez Hermanos Kennedy, LLC, and the real estate pertained to Inversiones VVM,

Civil No. 23-1529(RAM)                                                    7

LLC (the "Commercial Loan Settlement Statement"); (3) an e-mail from UBS Financial Services Inc. to Fahad Ghaffar indicating that his wire transfer for $17 million dollars had been completed (the "UBS Wire Transfer E-mail"); and (4) an e-mail from Lebin Matthew, Senior Vice President of Paulson & Co, Inc., to Mr. Ghaffar asking him "to confirm the economics of the deals you had" as to V12, specifically if Mr. Ghaffar has 50% equity of V12 and receives "55% net profits – 10% fee + 50% of remaining 90%" from V12 (the "Matthew E-mail"). (Docket Nos. 18-3; 18-4; 18-5; and 18-6, respectively). Notably, neither the Commercial Loan Settlement Statement, the UBS Wire Transfer E-mail, nor the Matthew E-mail mention BPR at all. The UBS Wire Transfer E-mail was sent to Mr. Ghaffar confirming that his transfer occurred, but it is unclear from the document whether the wire transfer was made by Mr. Ghaffar on behalf of BPR or for what purpose. Similarly, the Matthew E-mail discusses Mr. Ghaffar's interest in V12, but it is unclear in what capacity. The only document that explicitly discusses BPR's relation to V12 is the K-1 Form. Plaintiff asserts that a K-1 form, when coupled with other evidence under the totality of the evidence analysis, *can* evince membership in an LLC. (Docket No. 56 at 8, n. 6) (citing In re: General Home Store LLC, C.A. No. 11612-VCMR (Del. Ch. July 13, 2017); Mickman v. American International Processing, L.L.C., C.A. No. 3869-VCP, slip op. (Del. Ch. Apr. 1, 2009)).

Nevertheless, a K-1 form on its own cannot amend an operating agreement nor can it create or change an interest in an LLC. *See* In re Maniscalco, No., 2020 WL 6122656, at *2 (Bankr. M.D. Fla. Oct. 15, 2020), *aff'd sub nom*. NSB Horatio LLC v. Maniscalco, 2021 WL 4383704 (M.D. Fla. 2021) (concluding that "a K-1 does not create or change an interest in a limited liability company. While a K-1 may evidence that an interest is held in a particular way, an erroneous K-1 does not amend or override the express terms of the document creating the interest in the first place.").

In sum, Plaintiff has not shown: (1) that Paulson PRV consented to the inclusion of BPR as a member of V12; (2) that there are V12 records evincing that BPR was added as one its members; or (3) the existence of any written agreement establishing that BPR was admitted as a member, as contemplated and required to establish LLC membership under Article 19.18 of the GCA. Therefore, in light of the above, the Court finds that BPR is not a member of V12 and is consequently not authorized to file a claim pursuant to Article 19.10 of the GCA.

### B. Mr. Ghaffar is not a manager of V12

Even if BPR was a member of V12, Plaintiff's Article 19.10 claim fails because Mr. Ghaffar was not a manager of V12. As discussed above, Article 19.10 allows members to seek judicial review as to the "admission, election, appointment, removal or

resignation of a **manager of a limited liability company**, and the right of any person to become or continue to be a **manager** of a limited liability company." P.R. Laws Ann. tit. 14 § 3960 (emphasis added). Moreover, the GCA defines a manager as "person who is appointed manager of a limited liability company or designated as manager of a limited liability company under a limited liability company agreement or other similar document under which the limited liability company is formed." Id. § 3951(a).

However, V12's Operating Agreement explicitly provides that V12 "does not have 'managers,' as that term is used in the Act[,]" but rather "the business and affairs of the Company will be managed under the direction of, the Member, who will make all decisions and take all actions for the Company." (Docket No. 18-2 § 6). On the other hand, the Operating Agreement does allow the Member to designate individuals as "officers" of V12 and assign them titles, including that of "President," which shall constitute "the delegation to such person the authorities and duties that are normally associated" with their given title. Id. ¶ 8. In the present case, Mr. Ghaffar was serving as President and CEO of V12 when he was removed by Paulson PRV from his position. (Docket No. 18 ¶¶ 12, 21, 93). Per the clear terms of the Operating Agreement, regardless of the nature of his duties, Mr. Ghaffar served as an officer of BPR and not a manager as alleged by BPR.

Civil No. 23-1529(RAM)                                                     10

### C. Declaratory judgment is improper

The Declaratory Judgment Act ("DJA") provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The DJA is an enabling act conferring "discretion on the Courts rather than an absolute right upon the litigant." Prime Venture Corp. v. Fennix Glob. Holdings, Inc., 2020 WL 3244333, at *2 (D.P.R. 2020) (quoting DeNovelis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997)). The Supreme Court has held that "case of actual controversy" refers to "the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). Thus, the declaration must fall within "the type of relief that Article III allows courts to give—'decree[s] of a conclusive character' **adjudicating adverse parties' actual rights and interests**." In re: Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d 98, 111 (1st Cir. 2019) (emphasis added). Declaratory judgment is favored when the judgment: (1) serves a useful purpose in clarifying and settling the legal relations at issue; and (2) will terminate and provide relief from the uncertainty, insecurity, and

controversy giving rise to the proceeding. *See* <u>Cadillac Unif. & Linen Supply, Inc. v. Cent. Gen. de Trabajadores</u>, 2020 WL 4289389, at *6 (D.P.R. 2020), *R. & R. adopted*, 2020 WL 4289365, at *1 (D.P.R. 2020) (citation omitted). The practice seeks to limit avoidable losses and the unnecessary accrual of damages and to provide a party threatened with liability an early adjudication without waiting until an adversary begins an action after the damage has accrued. <u>Id.</u>

In its *Verified Amended Complaint*, BPR asks that the Court issue a declaratory judgment stating that: (1) Mr. Ghaffar was improperly removed from his position as CEO and President of V12 and should be reinstated in those positions; (2) Mr. Ghaffar "is the correct CEO and President of V12" with all the functions and duties that this position entails; (3) that the composition of the officers of V12 cannot be altered without the consent of both of its members, namely Paulson PRV and BPR; and (4) that any determination made after Mr. Ghaffar's removal without BPR's consent has no legal effect. (Docket No. 18 ¶¶ 122-25). As discussed at length above: (a) BPR is not a member of V12; and (b) Mr. Ghaffar was not a manager of V12. Rather, Mr. Ghaffar served as an officer of V12. The Operating Agreement authorizes the member of V12, *i.e.*, Paulson PRV, to remove an officer "with or without cause" and establishes that any delegation of the title or duties

of an officer "may be revoked at any time by the Member." (Docket No. 18-2 § 8). Accordingly, Plaintiff's requests for declaratory relief are inapposite.

### D. There are no grounds for damages

Lastly, Plaintiff seeks to recover damages caused by Paulson PRV's alleged breach of "duty of conduct" and violation of the doctrine of good faith. (Docket No. 18 ¶¶ 132-50). Given that the Operating Agreement explicitly and exclusively gives Paulson PRV the authority to remove officers of V12 with or without cause, at any time, the Court concludes that BPR has failed to articulate a claim upon which damages can be recovered. *See* (Docket No. 18-2 § 8).

### IV. CONCLUSION

In light of the above, Defendants' *Motion to Dismiss* at Docket No. 37 is hereby **GRANTED**. Plaintiff's *Verified Amended Complaint* at Docket No. 18 is **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 30th day of July 2024.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge